## West Philadelphia Buick Co. Corp., Appellant, v. Shuster et al.

330

Argued October 16, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Harry Cohen,* for appellant.

*Gerald A. Gleeson,* for appellee.

OPINION BY PARKER, J., January 31, 1936:

The defendant, a landlord, caused a distress to be made by a constable on property of the plaintiff, his tenant, for rent claimed to be in arrears. Thereupon plaintiff brought this action in replevin and took possession of the property seized and the cause came to trial before a jury. The question involved arises out of a claim by the tenant that the rent was reduced by defendant for the months for which rent was claimed.

In November, 1927, defendant made a written lease to plaintiff of a tenement on Chestnut Street, Philadelphia, for which he was to receive from it rent at the rate of $1,200 monthly in advance for a term expiring July 31, 1933. The rent beginning with November, 1931, was reduced for definite periods and paid and received on that basis until January, 1933. No claim is made for that period and we are not concerned therewith. On January 31, 1933, the landlord notified the tenant in writing that any reduction in the rent to which he had agreed expired with the rent due prior to January 1, 1933, and that he would thereafter expect his rent in accordance with the written contract at the rate of $1,200 per month.

At this point a dispute arose as to further conversations. An officer of the plaintiff corporation testified as follows with relation to a conversation between him and the defendant after the receipt of the letter of January 31 and within the first week of February: "Q. What happened? A. He said he was willing to go along with us for the months of January, February and March, and if conditions did not get better we would talk that thing over after that. Q. When he spoke about going along with you what were his exact words and what were your exact words? A. To accept the $1,000 rent which we had been paying him right along. Q. He was willing to accept $1,000 a month rent for what period? A. January, February and March, and we

would talk about April and May later on if conditions got better. That was just at the time of the bank closings and the President's proclamation—Q. What was said as to the balance of the rent for April, May, June and July of 1933? A. Said he would see what conditions would be after that and we would talk it over again." The defendant denied having made any such agreement or having had any such conversation. The rent was paid at the reduced rate for January, February, and March, 1933. The plaintiff also paid the defendant at the rate of $1,000 per month for the remaining four months of the term. The installments for May and June were paid by check mailed to the defendant or his agent. The check for July was delivered to the defendant personally when this conversation took place, according to the testimony of one of plaintiff's clerks: "Mr. Shuster came in on the morning of July 18, 1933, about twenty minutes after eight, we had just gotten in, and said he would like to have his check for the rent. I asked Mr. Hoffman our cashier to draw it and I signed it and turned around to Mr. Shuster and said, 'This is the last one we will have the pleasure of paying you.' Mr. Shuster said, 'I guess it has to be.'"

The defendant claimed $1,400, being the difference between the amount of rent fixed by the written lease and the amount received for the last seven months of the term and costs amounting to $111.50. The trial court gave binding instructions for $911.50 which represented an arrearage of $800, being the amount by which the amount paid was less than the rental fixed by the lease for the last four months of the term, together with the costs on the distraint and, in effect, submitted to the jury the question as to whether the defendant had agreed to reduce the rent for the months of January, February, and March. On this issue the jury rendered a verdict for the defendant for the amount directed by the court and found for the plaintiff as to the

rent for the first three months of 1933. In view of the fact that the court directed a verdict for part of the claim, and such action is the ground of this appeal, the testimony on behalf of the plaintiff must be viewed in a light most favorable to it and all reasonable inferences drawn in its favor.

While ordinarily a subsequent modification of a lease requires a consideration to support it (35 C. J. 1171) the rule in Pennsylvania seems to be that insofar as a subsequent parol agreement for the reduction has been executed it is valid: Evans v. Lincoln Co., 204 Pa. 448, 451, 54 A. 321; Howard v. Boverman, 67 Pa. Superior Ct. 83; Aronsky v. Byron Silk Mills, Inc., 97 Pa. Superior Ct. 551. It would follow that the trial court correctly submitted to the jury the question as to whether an agreement for the reduction of the rent had been made for the months of January, February, and March.

There is absolutely no testimony supporting an agreement between the parties for a reduction of the rent after March 31, 1933. The statement of the witness for plaintiff, which we have recited, is not ambiguous and is to the effect that the reduction covered only the first three months, that after that period the matter could be taken up, and there is no evidence that it was taken up. The plaintiff therefore depends solely upon the fact that the defendant accepted checks for $1,000 each for the last four months of the term. No receipts were given and there was nothing shown to have been upon the checks indicating that they were to be received in full satisfaction of the rent due at the time or in settlement of any dispute. As the court below points out, a written contract such as this cannot be varied by a mere inference or implication that would arise from the receipt and retention of checks for a reduced amount. There is no claim by the appellant that when the checks were sent the check if accepted would be

considered as a compromise of the claim, that it was tendered as such, or that acceptance thereof would be considered a waiver of defendant's right to the balance of his claim. The facts in the case of Lovekin v. Fairbanks, Morse & Co., 282 Pa. 100, 127 A. 450, were stronger in favor of the debtor than in the present case. There Mr. Justice SIMPSON said (p. 102): "The payment made was not a compromise, for it included only the exact amount which was admitted to be due. Paying a less sum than is owing, will not defeat a claim for the balance, in the absence of an express or implied agreement to that effect. For this reason we have held steadily to the position that an accord and satisfaction cannot arise by reason of the payment of less than is due, unless it clearly appears not only that this was the intention of the payor, but also that the payee expressly agreed to it, or was bound to know of the intention at the time of acceptance; in effect, that 'his taking of the check would be tortious except on the assumption of a taking in full satisfaction': 3 Williston on Contracts 3181. It cannot be too strongly stated, that with us an accord and satisfaction can never be implied from language of doubtful meaning; indeed, the words themselves deny this possibility. Hence, when a substantial doubt arises, there can be no such implication, the usual rule applies, and the payment will be treated as on account only." There was nothing in the alleged conversation of July 18, 1933, tending to show an existing dispute or any agreement to take less than the amount called for by the written lease. In fact the written notice of January 31, 1933, and the subsequent conversation as related by one of plaintiff's officers was a clear and unambiguous notice to plaintiff that defendant was claiming the amount fixed by the lease.

We find no merit in the suggestion of the appellant that the claim for rent cannot be sustained because it

"attempts to lump seven so-called successive monthly balances." We do not so understand the claim for rent either from the standpoint of the pleadings or the proofs. The claim as set up in that part of the affidavit of defense which is described as a counter-claim is a claim for arrearages amounting to $1,400. This is followed by a table showing an accumulation of the arrearage over a period of seven months. We do not think this could be construed as anything but a claim for the single amount of $1,400. The fair import of the proofs is to the same effect.

The appellant also complains of that part of the charge which directed the jury to include the costs of distraint in the amount of $111.50 in the verdict. The record discloses that it was stipulated by counsel that the claim of the constable for costs and of the landlord for rent should be considered as one matter and that such claim of the constable for costs should be considered under the claim of the landlord and as made on behalf of himself and the constable. It appeared from the testimony that the defendant had not settled with the constable for the costs of the distraint and appellant contends that he is therefore not entitled to anything on that account. At the trial, when defendant reached the point where it was incumbent on him to prove the costs of the distraint made by his constable, the trial judge said: "There is no dispute as to the amount, is there?" To this counsel for the plaintiff replied: "I do not think there is any dispute as to the amount. There may be a dispute as to whether or not he has paid them or what disposition has been made between the landlord and the constable." At the conclusion of the charge the only exception taken by the appellant was as follows: "Your Honor will grant me an exception to the $800?" Not only was there no exception to that part of the charge which dealt with the subject of costs, but the fair inference was that there

was no objection to what the court had said with relation thereto. It is too late to raise the question now. In any event, the fact that the landlord had not settled with the constable was of no consequence and had no bearing. The lien was not only for the rent in arrears but also for the costs, and the parties stipulated that costs should be treated as the verdict was rendered.

Judgment affirmed.