## Burke v. Schaefer

*George W. Westervelt, Jr.,* for plaintiff.
*Carol Schaefer,* for defendant.

WILLIAMSON, *J.,* April 25, 2013—

## I. FINDINGS OF FACT

1. Plaintiff is Jack Burke, owner of real property at 1845 West Main Street, Stroudsburg, Pennsylvania ("premises").

2. Defendant is Carol Schaefer, who was a tenant at the premises.

3. There was a lease agreement ("lease") dated October 1, 2006, between Jack Burke as landlord, and Carol Schaefer and Melanie Marshall as tenants.[1]

4. Carol Schaefer and Melanie Marshall signed a personal guaranty, agreeing to be jointly and severally liable under the lease.

5. Ms. Marshall was removed from the lease after the

---

[1]. A lease agreement was attached to plaintiff's complaint and that copy was made a part of the record. However, that lease agreement did not contain a signature page, and no other copy of the lease was presented to this court.

first year.

6. No writing was done to confirm Ms. Marshall's removal from the lease and obligations thereunder.

7. The initial term of the lease was for one (1) year starting October 1, 2006 at a rental amount of $4,500 per month.

8. There was a two (2) year renewal term thereafter at $5,500 per month.

9. A security deposit of $4,500 was paid at the start of the lease by the defendant to the plaintiff.

10. The lease called for interest of 10% per annum on any unpaid balance, and a late payment fee of $50 on any rental payments not paid within five (5) days of the due date.

11. The lease called for an attorney's commission of 10% of the unpaid rent and costs if the defendant was in default of the lease.

12. The lease contained an option to renew that required a ninety (90) day written notice from defendant to plaintiff prior to expiration of the initial term.

13. Defendant continued to lease the premises until September 30, 2010, when defendant vacated the premises.

14. Defendant paid $4,500 per month rent in the first year of the lease, from October 1, 2006 — September 30, 2007.

15. The parties entered into an oral agreement to reduce the rent to $3,500 per month starting October 1, 2007 due

to the condition of the premises and the economy.

16. Defendant made the 2006, 2007, 2008 and 2009 payments due under her agreement with the plaintiff.

17. Defendant did not make the payments due for January 1, 2010 to September 30, 2010.

18. The parties could not reach an agreement with regard to extending terms beyond September 30, 2010.

19. Defendant vacated the premises on or about September 30, 2010.

20. James Reid testified about conversations he had with plaintiff and defendant while he attempted to negotiate with plaintiff to lease the premises after the defendant.

21. Mr. Reid said the plaintiff told him the rent plaintiff would charge him was the same that plaintiff originally was charging the defendant, but that he had lowered the defendant's rent because he did not want to look for a new tenant while the market was slow.

22. Mr. Reid stated that the defendant also told him the plaintiff had lowered her rent because of the economy and the building condition, and that her actual rent was lower than plaintiff had proposed to Mr. Reid.

23. Mr. Reid believed that plaintiff had suggested he pay rent of $3,500, but he was uncertain of the amount.

24. Neither Plaintiff nor defendant presented copies of cancelled checks.

25. Plaintiff presented tax returns for his corporation, Jack Burke, Inc., in support of the amount he alleged was

due.

## II. DISCUSSION

Plaintiff presented the lease dated October 1, 2006, a copy of which lacked a signature page. However, both parties acknowledged the lease, that they signed it, and that there was a signed personal guarantee, which was attached. The lease was clear as to the rent to be charged in the first year, starting October 1, 2006, of $4,500 per month. The lease required written notice to renew thereafter. There was a discrepancy in the lease as to whether or not the rent during the renewal periods was to be $5,500 or $6,000. There was no written renewal (option) between the parties as required by the terms of the lease.

The defendant states she met with the plaintiff after the first year of the lease to discuss renewal. She advised the plaintiff that the condition of the building and the economy did not warrant the rent of $5,500 per month (or even the prior year rent of $4,500 per month). The defendant testified she requested a reduction in rent in order for her to continue to lease the premises. She stated the plaintiff agreed, and when she requested they put it in writing, the plaintiff said there was no need to do so, saying "you got it." In the third year of the lease, the defendant stated the plaintiff agreed again to lease her the premises for $3,500 per month. The defendant said plaintiff did this due to the economy. The plaintiff specifically mentioned to defendant that there were less workers at his employer, Raymour and Flanigan, as an example of the soft economy. There was no testimony as to whether there was a conversation about renewal terms for the fourth (and last) year of the lease.

However, the defendant did stay in the premises until the end of year four, on September 30, 2010, and there was no evidence that a different rent or terms were agreed to in year four, compared to years two and three.

We find a modification of the lease was made after the first year of the lease. There can be an oral supplemental agreement to a written agreement. *Sipowicz v. Olivieri*, 174 Pa. Super. 549, 102 A.2d 175 (1954). The burden of proof rests with the party seeking to establish the change in terms. *Id.* [*citing Sferra v. Urling*, 324 Pa. 344, 188 A. 185 (1936)]. However, paying a less sum than is owing will not itself defeat a claim for the balance due, unless there is an express or implied agreement to that effect. *West Philadelphia Buick Co. v. Shuster*, 120 Pa. Super. 329, 183 A. 75 (1936).

We find defendant's testimony concerning the oral agreement to reduce the rent was credible and convincing. Defendant requested the change or she would have to move out at the end of the first year of the lease, as permitted by the lease, with no penalty. She paid the full amount of the rent called for in the first year of the lease, which was $4,500 per month. The defendant verbally notified plaintiff she would not stay unless the rent was lowered. Furthermore, the defendant did not send the written notice required to exercise the automatic renewal clause. The defendant ultimately paid $3,500 per month for the remainder of the time she occupied the premises. She could have left voluntarily with no penalty if an agreement could not have been reached. Therefore, it is plausible she only stayed upon agreement to a lower amount of rent.

Furthermore, a renewal of the lease, and lease terms, only occurs if the defendant gives written notice to the plaintiff ninety (90) days before expiration of the first year of the lease. There was no testimony of a written renewal, so, the written lease itself, and the terms therein were never renewed, and only a subsequent oral agreement remained in place. The defendant also requested the plaintiff put the reduced rent agreement in writing, but plaintiff assured the defendant it was not necessary. Since no written notice of the renewal option was given to the plaintiff, it would have been in the plaintiff's best interest to execute a new written agreement, for the terms plaintiff stated he believed were continued after the first year of the lease. However, this was not done.

Although neither party presented cancelled checks, Plaintiff claims he was accepting payment of $3,500 per month, instead of $5,500 or $6,000 per month, as partial payments. Plaintiff continued to do this until she vacated the premises. However, the plaintiff sent no written notice to the defendant for the three years she "underpaid" the rent by $2,000 — $2,500 per month. The plaintiff testified that he told the defendant each month she was behind on the rent.

We note that plaintiff also testified he had been living out of state for a period of time. It was unclear if any of this time coincided with defendant's tenancy at the premises, or during any of the visits by the plaintiff's sons to "collect rent" from the defendant. Testimony also showed the plaintiff was present in Pennsylvania for a substantial period of this matter, as he worked in Stroudsburg at Raymour and Flanigan. In any event, we

are not convinced that plaintiff was entirely certain of his business transactions with the defendant.

For example, plaintiff produced his 2008, 2009 and 2010 tax returns as proof that the defendant did not pay either $5,500 per month or $6,000 per month rent as referenced in the original lease agreement. Interestingly, the tax returns, which allegedly only showed income from the premises leased to the defendant, shows $42,000 for 2008 and $37,500 for 2009. This correlates to the rent paid by the defendant of $3,500 per month in 2008 and 2009, less $4,500 for some reason in 2009. No testimony was provided as to the discrepancy in the 2009 tax return showing $4,500 less in income to the plaintiff. There was no testimony that defendant either failed to pay that amount in 2009 or if or when the defendant was short on payments. The number does correspond with the security deposit amount paid by the defendant, but nothing else. Furthermore, plaintiff's tax return shows no income received for 2010, but no other written documentation. Plaintiff had no ledger, or other means of recording payments either received, or not received. There were no copies of checks and no rent payment receipts. There were also no written notices.

We also note that plaintiff's tax returns where he claimed rent from the defendant was a corporate tax return, in the name of "John R. Burke, Inc." However, the original lease agreement was between Jack Burke, individually, and the defendant. There was no testimony at trial as to how payments were made by the defendant, other than a reference by the defendant to cancelled checks she neglected to bring to trial. However, in her deposition

taken in support of opening the judgment by confession, the defendant stated she was directed to make checks payable to Jack Burke, and that he personally picked up the checks each month.[2] This was confirmed for the most part by the plaintiff, although plaintiff's sons also went to the premises at times to pick up rent on behalf of the plaintiff. Plaintiff's testimony and reliance on his corporate tax returns for 2008 and 2009 did not sufficiently support his contention that rent for those years was to be as set forth in the lease.

Plaintiff stated his knowledge that rent was not paid in full was because of his reliance on his tax returns. Plaintiff never sent written notice to the defendant in the three (3) years that she occupied the premises that she was in default of the lease, nor that she was paying less than owed, nor acknowledging that he was accepting her payments as partial payments. Plaintiff's testimony was that he verbally advised the defendant every month when he collected rent that she was short on payments. Plaintiff took no steps to evict the defendant, nor did he refuse to renew the lease term at the end of 2008 or 2009. This was despite the fact plaintiff alleged defendant owed him $24,000 — $30,000 as of September 30, 2008 and $48,000 — $60,000 as of September 30, 2009. No matter how bad the economy, it is not prudent business to keep such a delinquent tenant in a property without taking some course of action, or at least, by not renewing a lease term, or sending a letter of default.

Plaintiff testified he filed suit immediately after defendant vacated the premises. We note the complaint

---

2. The deposition of the defendant, taken October 31, 2011, was filed with the court by praecipe on November 4, 2011.

in confession of judgment was filed October 10, 2012 and plaintiff alleges therein that defendant vacated the premises on September 16, 2010. However, we also note that plaintiff sent no letter of default or demand for payment prior to filing the complaint. The defendant also testified she discussed renewal terms with the plaintiff prior to vacating the premises, in which the plaintiff offered to pay a portion of the heat bill because of the high bills and inability for the heat to work properly. If not satisfied with the amount of rent being paid, it would have been more prudent of the plaintiff to refuse to discuss terms of a renewal.

We also find the testimony of James Reid was compelling. Mr. Reid was a business acquaintance of the defendant in the antique field. He inquired about renting the premises from plaintiff for a similar use as the defendant at the end of defendant's lease term. While negotiating a lease with the plaintiff, the plaintiff told Reid that the rent to be charged to Reid was what he initially was charging the defendant. The plaintiff told Reid that he lowered the rent twice for the defendant because he did not want to look for a new tenant if she moved out, as the market was slow. Plaintiff told Reid he now wanted the rent for a new tenant back to the original amount he wanted from the defendant since defendant was leaving anyway. Reid thought the rent to be charged to him was $3,500, but he was uncertain. He just knew it was more than plaintiff charged defendant, as related to him by the plaintiff. Mr. Reid also spoke to the defendant during this time, and she also advised him that she "re-negotiated" the rent to a lower amount after the initial term.

Mr. Reid was a credible witness. Whether or not he can recall the exact rent plaintiff wished to charge him is of minor importance, as we find his testimony convincing nonetheless. Reid and the plaintiff never came to terms on a lease, because the rent requested was too high for Reid. In the conversation with Reid, plaintiff did not mention that the defendant had failed to make payments, or that she was in default of her obligations. Mr. Reid's testimony supports the testimony of the defendant. We find the defendant has provided testimony by a preponderance of the evidence that there was an oral agreement for monthly rent in the amount of $3,500.

Finally, we must address the plaintiff's claim that the defendant did not pay any rent from January 1, 2010 to September 30, 2010. We find the plaintiff did show this by a preponderance of the evidence. Plaintiff filed a complaint soon after defendant vacated, alleging unpaid rent. Testimony showed the defendant was unhappy with the heating situation, and the economic uncertainties. Plaintiff sent no written notice to defendant regarding her default, but plaintiff appeared to be trying to work with the defendant to keep her in the premises, rather than having to look for a new tenant in a down economy. Plaintiff testified he requested rent each month and the defendant concurred this was the usual form of collection. defendant also testified plaintiff's sons came to her business to request payments (although she expressed that they were harassing her). Although a timeframe was not given, the plaintiff did negotiate with Mr. Reid for a lease of the premises around the time defendant was still there, or had just vacated. Plaintiff's tax return for 2010, and presumably

his tax records, show no payments in 2010. His 2008 and 2009 tax returns showed the amounts defendant did pay in those two years (except an unexplained $4,500 difference in 2009) as agreed to by both parties. Defendant offered no proof of payment, in the form of receipts, cancelled checks, or bank statements, although she said at close of all evidence that she could get canceled checks if permitted. We find plaintiff was credible in his portion of testimony that defendant failed to pay any rent from January 1, 2010 to September 30, 2010. We find the rent that should have been paid was $3,500 per month. For the nine months of non-payment, less security deposit of $4,500, the amount due is $27,000.

We find that despite defendant's failure to pay rent as required for 2010, no attorneys fees, late fees or interest shall be assessed. Due to the re-negotiation of terms of the lease, and the lack of a fully signed lease agreement, we do not find the plaintiff has met his burden for this relief.

### III. CONCLUSIONS OF LAW

1. No answer or responsive pleading shall be required in an action to confess judgment. Pa. R.C.P. 2952(b).

2. The proper procedure in an action to confess judgment, where the judgment has been opened, is to proceed to a trial on the merits of the complaint and grounds for the alleged judgment.

3. The plaintiff is unable to show that he is entitled to a judgment on the written lease agreement attached to the complaint for rent due in 2007, 2008 or 2009.

4. Defendant is not in default of the terms of the lease

for 2007, 2008 or 2009.

5. Defendant is in default of the terms of the lease for 2010.

6. Plaintiff is not entitled to attorneys fees, late fees or interest.

### DECREE NISI

And now, this 25th day of April, 2013, we find as follows:

1. Plaintiff's verbal motion for default judgment requested at the start of trial in this matter for failure of the defendant to file an answer or other responsive pleading is denied.

2. Plaintiff's request to enter judgment under the terms of a lease is granted in part and denied in part. We find in favor of the plaintiff and against the defendant in the amount of $27,000.00.

3. Either party may move for a final decree or other relief deemed necessary pursuant to the Rules of Civil Procedure.